

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable D. C. Greer
State Highway Engineer
Texas Highway Department
Austin, Texas

Dear Sir:

Opinion No. O-4698
Re: Authority of State Highway Com-
mission to close a portion of
the State Highway, and related
questions.

    We acknowledge receipt of your request for an opinion of this department as follows:

    "The War Department has established a large Quartermaster Depot just South of the city limits of Fort Worth. This Depot lies part on each side of U. S. Highway No. 81 and the Officials of the United States Army have requested the Highway Commission to authorize them to close and barricade that portion of U. S. Highway No. 81 lying between the North and South Limits of the Depot. The further request has been made that the Highway Commission either convey right-of-way and Highway Improvements within that area to the Federal Government or enter into an agree- ment with Officials of the Army authorizing them to close and barricade the Highway to all traffic during the period of the emergency and for a reasonable period thereafter. In consideration of the conveyance or agreement it proposed that the Federal Government pay such amount of money as may be necessary to improve a circuitous route around the Depot for the use of the public during the period covered by the agreement or conveyance. Funds for this purpose are available.

    "The Highway Commission realizes its obligation to the State of Texas and to the traveling public and in view of the fact that the State has a large investment of public money in the improvements on U. S. Highway No. 81 within the limits of the Depot it does not wish to permanently close, abandon, or dispose of the road.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

The Highway Commission has cooperated fully with all Governmental Agencies engaged in the war effort in the past and while it is not now desirous of closing a primary highway, is willing to accede to the demands of the army in this instance if it can be done within the statutory authority of the Commission and without subjecting this Department or the Commission, either officially or in their individual capacities to any liability for such action and further, if it is assured that the Highway will be returned to the Department and the people of Texas after the termination of the emergency.

"It has been suggested to Officials of the Army that while the Higway Commission may not have legal authority to convey the Highway by deed or easement, or to agree to the closing of the Highway as desired by them, the United States could acquire it by condemnation. Judgment, incorporating all the provisions considered desirable to both the Federal and State Governments, as well as the agreed consideration, could be prepared and entered by agreement thus eliminating all of the legal questions which arise if any other means of accomplishing the end desired by the Army are followed.

"I have given you a rather complete background and discussion of the question and would appreciate it if you would consider the desire of the Federal Government to obtain the Highway within the limits of the Quartermaster Depot and advise me what procedure the Commission may legally follow in placing control over that portion of the Highway in the War Department and, at the same time incur no liability, either by the State or by the individual members of the Highway Commission for such action."

It will be first noted that the United States Army has requested the State Highway Commission to authorize it to barricade that portion of U. S. Highway 81 which lies between the North and South limits of the Quartermaster Depot.

It is so well settled that the establishment and maintenance of a system of highways is a governmental function, no citation of authorities is necessary.

The Legislature has the ultimate and paramount control over the location, designation and establishment of such highways. Pursuant to its power, the Legislature created the State Highway Department and vested the administrative control thereof in the State Highway Commission. Article 6663, Vernon's Annotated Civil Statutes, creates an agency in which are vested powers to formulate and execute plans and policies for the location, construction and maintenance of a comprehensive system of state highways and public roads. Robbins vs. Limestone County, 268 S. W. 915. In the case of Nairn vs. Bean, 48 S. W. (2d) 584, the Commission of Appeals of Texas, in an opinion by Justice Ryan, adopted by the Supreme Court, held that the Act vested the control of the state highways in the State Highway Department with regard to the designation, location, relocation, improvement, construction, abandonment or discontinuance thereof. Nowhere do the highway statutes authorize the State Highway Department to delegate its powers to other agencies.

You are therefore advised that the State Highway Commission does not have authority to authorize the U. S. Army to barricade the above mentioned portion of U. S. Highway 81, nor does it have authority to enter into a contract or agreement to such effect.

In regard to whether or not the State Highway Department is authorized to convey the right-of-way and improvements in that portion of the highway to the Federal Government, you are advised that Article 6673a, Section 1, Vernon's Annotated Civil Statutes, provides as follows:

"Wherever the State Highway Commission has acquired or shall hereafter acquire any land by purchase, condemnation, or otherwise to be used as a right of way for any State Highway and thereafter the route of such Highway was or shall be changed or abandoned, and any such right of way be no longer needed for such Highway, or needed for use of citizens as a road, the State Highway Commission may recommend to the Governor that such land be sold and that he execute a deed conveying all the State's right, title and interest in such land so acquired. Upon the recommendation of the Commission, the Governor may execute a proper deed conveying and/or exchanging such land for different land belonging to the same person or persons. It shall be the duty of the Commission to fix the fair and reasonable value of all such land and advise the

Governor thereof. Provided that where such land is given to the State, the Governor may return the same by proper deed to the person or persons from whom the same is received. All money derived from the sale of such land shall be deposited with the funds from which it was originally taken. The Attorney General shall approve all transfers under this Act."

You are, therefore, advised that if the State Highway Commission makes a finding that the portion of the right of way in question is no longer needed for such highway, or for the use of citizens as a road, it can sell the land as provided in Article 6675a, supra. But, you have advised in your request that you want to be assured that the road will return to the State upon the termination of the present war emergency for the use of the State and its citizens as a highway. Such being the case, we do not believe that the State Highway Department would be authorized to enter an order requesting the Governor to convey the land to the Federal Government, for such an order would be in direct conflict with the limitation emphasized above.

In regard to the suggestion that the closing of the highway be accomplished by condemnation, you are advised that Section 171, Chapter 11, Title 50, U. S. Code Annotated, provides, in part, as follows:

"The Secretary of War may cause proceedings to be instituted in the name of the United States, in any Court having jurisdiction of such proceedings for the acquirement by condemnation of any land, temporary use thereof or other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications, coast defenses, (and) military training camps, . . . and further provided, that when such property is acquired in time of war, . . . upon the filing of the petition for the condemnation of any land, temporary use thereof, or other interest therein or right pertaining thereto to be acquired for any of the purposes aforesaid, immediate possession thereof may be taken to the extent of the interest to be acquired and the lands may be occupied and used for military purposes, and the provision of Section 175 of this title, providing that no public money shall be expended upon such land until . . . the consent of the Legislature of the State in which the land is located has been given,

shall be, and the same are hereby, suspended during
the period of the existing emergency.

Section 257, Chapter 3, Title 40, U. S. Code Annotated,
provides in part as follows:

"In every case in which the Secretary of the Treas-
ury or any other officer of the government has been or
shall be authorized to procure real estate for the erec-
tion of a public building or for other public uses he
shall be authorized to acquire the same for the United
States by condemnation, under judicial process, whenever
in his opinion it is necessary or advantageous to the
Government to do so. * * * "

In the case of Chappell vs. United States, 81 Fed. 764,
the Circuit Court of Appeals held that the statutes above quoted
are in pari materia.

It is apparent that the Secretary of War has the power to
acquire the land in question by condemnation. Not only may he con-
demn the land, but may also condemn to any extent desired and the
condemnation may also be for temporary use. Vol. 33 (1923), Opinions
of the Attorney General of the United States, page 551. In the case
at bar, we are of the opinion that the United States may condemn the
portion of the United States Highway No. 81 lying between the North
and South limits of the Quartermaster Depot and may do so for the
use of the land for whatever period of time it desires. In connec-
tion therewith we are of the further opinion that the amount of
damages to the State could be agreed upon between the United States
and the State of Texas.

You further ask what procedure, if any, could the State
Highway Department go through to place a highway within the limits
of the Quartermaster Depot in the control of the War Department.
We doubt that the Highway Department has the authority to place the
highway in the control of the War Department, but we do believe that
under certain circumstances, the highway department would have au-
thority to discontinue use of that portion of the highway without
liability on the part of the state or the individual members of the
State Highway Commission. If the State Highway Commission should find
as a matter of fact that because of the location of the Depot on both
sides of the highway and the moving of the materials across the high-
way by the War Department constituted a more than ordinary danger to
the traveling public, that the State Highway Commission would be au-
thorized to close that portion of the highway during the existence of
such danger. In the event munitions are stored at the depot and such
fact constituted a danger to the traveling public, we believe that the
Commission would be justified in closing the portion of the highway

Honorable D. C. Greer, Page 6

in question to the public while such danger exists.  This for the reason that in the case of Heathman vs. Singletary, 12 S. W. (2d) 150, the Commission of Appeals, speaking through Justice Short, said:

"The Act creating the State Highway Department by the terms of which that department was fully and completely vested with the administrative control of all public roads, which might be a part of the State Highway System, . . . and, jurisdiction with respect to the designation, location, relocation, improvement, construction, abandonment, or discontinuance and control of such of the public roads as were then recognized as a part of the State Highway System, or over such of the public roads of the State as thereafter . . . become a part of the State Highway System."

The Highway Commission having the authority as set forth in the above citation, it follows that it is authorized to direct the flow of traffic over such highways and as is held in 16 Tex. Jur. 562:  "If the regulations are intended to, and do in fact, protect the lives and property of citizens, they are an exercise of police power."  It naturally follows that such regulation on the part of the Highway Department would be authorized because its broad powers under the Act creating such department inherently include the police power of the government insofar as highway traffic is concerned over highways constructed by the State Highway Department.

You are therefore advised that if the State Highway Commission should find that the facts above mentioned exist and that they constitute a menace and danger to the traveling public, such facts would constitute such good faith on the part of the State Highway Commission and their act of discontinuing the use of the road during the existence of the emergency would be justified.

Whether or not the State of Texas or members of the Highway Commission individually would be held liable for damages is a question of fact.  You are advised, however, that if the barricading and discontinuance of the highway would close some person's access to and from his property, there would be liability on the part of the State.  By this we do not mean that a person using U. S. Highway 81 would be entitled to damages because he was not permitted to travel over the closed portion thereof, but that he cannot be deprived of his access to a highway.  It matters not that

that person might have to travel a more circuitous route to go, we will say, to Fort Worth.

In the case of Heller vs. Atchison, Topeka & Santa Fe Railroad Company, 28 Kan. 625, it is held: "The benefits which come and go with the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities." And, in the case of Smith vs. City of Boston, 7 Cushing 254, Chief Justice Shaw said:

"The damage must be the direct and immediate consequence of the act complained of and remote and contingent damages are not recoverable. The petitioner has free access to all of his lots by public streets. The burden of his complaint is, that in going to some of his houses in the same direction he may be obliged to go further than he otherwise would. The inconvenience was not such an injury done him in his property as would entitle him to damages."

Further, in the case of Fearing vs. Erwin, 55 N. Y. 486, the court held:

"Though one public way to property is closed, if there is another left, the property-owner sustains no actionable damages."

You are, therefore, advised that if there are no persons who use the proposed barricaded portion of the highway as a means of ingress or egress, there would be no liability.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Richard H. Cooke
Assistant

APPROVED AUG 17 1942

FIRST ASSISTANT
ATTORNEY GENERAL

RHC:ej


APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN